IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NATIONAL VIATICAL, INC. and JAMES TORCHIA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION ) ) CASE NO. 1:11-CV-01226-RHB |
| UNIVERSAL SETTLEMENTS INTERNATIONAL, INC., | ) ) ) |
| Defendant. | ) |

**PLAINTIFFS NVI AND JAMES TORCHIA'S BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE COUNT III OF USI'S COUNTERCLAIM**

## I.  Introduction.

Universal Settlements International, Inc. baldly accused Plaintiffs and their counsel of scandalous actions:

> Plaintiffs *and their counsel* intentionally misrepresented *their* intentions to fully and completely settle the W.D. Mich. Action.
>
> [ . . . ]
>
> Upon information and belief, these representations were false when made by Plaintiffs *and their counsel* at the October 26, 201[0] [sic] settlement conference, and in communications subsequent to the conference.

(USI's Countercl., ¶¶ 91, 93) (emphasis added).  USI, however, did not allege any facts in support of its scandalous allegations. Rather, defendant USI disparages Plaintiffs and

their counsel based on nothing more than its own "information and belief." (See id., ¶¶ 93-96). As described below, USI's ad hominem attacks against Plaintiffs and their counsel are abusive, offensive, and wholly baseless and unsubstantiated. This Court should therefore strike USI's scandalous allegations under FED. R. CIV. P. 12(f).

## II. Statement of Facts.

Litigation began between the parties when USI filed suit against NVI and NVI's chief executive officer James Torchia in Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc., et al., Case No. 1:07-cv-1243-RHB in the United States District Court for the Western District of Michigan. (Ver. Compl. ¶ 12). After three years of vigorous litigation, the parties settled on October 26, 2010. (Id., ¶ 13). The settlement was oral, but was reflected on the record before Judge Carmody, who personally mediated the settlement by caucus. (Id.). Pursuant to a confidentiality provision, this record was placed under seal, but available to parties and counsel. (Id. ¶ 14). Under the settlement, NVI and Torchia were required to make payments to USI according to certain terms. (Id. ¶¶ 19-20). The settlement agreement required the parties to perform certain obligations pursuant to a mutual confidentiality clause and a notice and cure provision. (October 26, 2010 Sealed Transcript of Settlement Conference, p. 10 (DE 470, No. 1:07-cv-1243)).

Despite the confidentiality clause, USI prominently advertised sensitive details of the settlement. It displayed a "Notice of Settlement of US Litigation" on its website, which was publically available to all internet traffic. (Id. ¶ 16). This notice disclosed the

2

total amount of the settlement and terms of payment. (Id. ¶¶ 19-20). The terms were also disclosed to Ernst & Young, which prominently displayed the same information on its website. (Id. ¶ 22). Although USI baldly claims that it was "required" to post the terms on its website, (USI's Countercl. ¶ 38), it has not alleged facts to support this argument. Nor has it alleged any facts concerning any efforts to comply with the confidentiality provision, such as by submitting a "chambers motion," which USI's Canadian counsel suggested on the record to maintain confidentiality. (October 26, 2010 Sealed Transcript of Settlement Conference, p. 13 (DE 470, No. 1:07-cv-1243)).

After USI breached the confidentiality provision of the settlement, NVI and Torchia filed the instant lawsuit in the Superior Court of Cherokee County, Georgia, and brought counts against USI for declaratory judgment, breach of contract, injunctive relief, and setoff. (See Ver. Compl.). NVI and Torchia thereafter sought a temporary restraining order and interlocutory injunction enjoining USI from (1) demanding performance under the settlement agreement; and (2) seeking default against NVI and Torchia. (See Emergency Mot. for TRO). The Superior Court granted NVI and Torchia's motion for a TRO on April 21, 2011, and issued an order restraining USI from "(1) demanding performance under its settlement agreement with Plaintiffs; and (2) seeking default against Plaintiffs." (See Order Granting Pls.' Emergency Mot. for TRO).

USI subsequently removed NVI and Torchia's action from the Superior Court of Cherokee County, Georgia to the District Court for the Northern District of Georgia, and

filed its Answer, Affirmative Defenses, and Counterclaim which included Counts for breach of contract, declaratory judgment, and fraudulent inducement.  (See USI's Countercl. ¶¶ 63-100).

### III.  Argument and Citation to Law.

In Count III of its Counterclaim, USI recklessly expanded inadequate pleadings into scandalous accusations.  USI alleged in Count III that it was fraudulently induced into executing a settlement with NVI and Torchia by both the parties *and their counsel*. (Countercl. ¶¶ 90-100).  As an initial matter, USI's count for fraudulent inducement was inadequately plead as USI failed to allege any supporting facts whatsoever.  It is therefore subject to dismissal for failure to state a claim.[1]  See FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"); King v. Bank of Am. Corp., No. 09-12481, 2009 U.S. Dist. LEXIS 82799, *10 (E.D. Mich. Sept. 11, 2009) ("A pleading that fails to comply with the requirements of Rule 9(b) fails to state a claim under Rule 12(b)(6).")  Worse, however, are USI's allegations that Plaintiffs and their counsel intentionally lied about NVI and Torchia's intent to settle USI's Western District of Michigan action. (Countercl. ¶¶ 91, 93).  Part A of this motion addresses the scandalous, unprofessional and unethical nature of USI's allegations in Count III.  Part B details how USI's allegations were

---

[1] NVI and Torchia will be filing a Motion to Dismiss shortly.

knowingly and factually false.  USI's baseless, ad hominem attacks directed at opposing counsel are simply unacceptable and should be stricken.

### A. USI's allegations against opposing counsel are scandalous, unprofessional and unethical.

FED. R. CIV. P. 12(f) provides that the Court may "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Scandalous, as referenced in Rule 12(f), "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."  Johnson v. County of Macomb, No. 08-10108, 2008 U.S. Dist. LEXIS 38617, *4 (E.D. Mich. May 13, 2008), (quoting Pigford v. Veneman, 215 F.R.D. 2, 4 (D.D.C. 2003)).  Moreover, "[l]aunching allegations of fraud against opposing counsel without reasonable inquiry as to their truth is unprofessional and unethical behavior, not to mention offensive and damaging to reputable attorneys."  Williams v. Fla. Health Scis. Ctr., No. 8:05-CV-68-T-23, 2007 U.S. Dist. LEXIS 13006, *8 (M.D. Fla. Feb. 26, 2007).  USI's wholly unsubstantiated accusation that opposing counsel is a conspirator in a fraud it knows never occurred is unquestionably scandalous, unprofessional and unethical, especially given that pleadings become part of the public record.

USI alleges in Count III of its Counterclaim that "Plaintiffs [NVI and Torchia] indicated a willingness to enter into the Settlement Agreement," but that "these representations were false when made by Plaintiffs and their counsel at the October 26,

5

2011 settlement conference, and in communications subsequent to the conference." (Countercl. ¶¶ 92-93). Such alleged promissory representations by NVI and Torchia are considered contractual in nature under Michigan law unless USI shows evidence of fraudulent intent at the time of settlement or immediately thereafter. USI's pleadings are devoid of any such alleged facts, however, and its count for fraudulent inducement necessarily fails under Michigan law:

> Defendants attempt to distinguish their case by bringing it within the rule that if at the time the representations were made there was no present intention to carry them out, it constitutes fraud. [ . . . ] Had there been any showing of any statements made or acts done by plaintiff, at or about the time the alleged representations were made, tending to show an intention on his part not to carry them out, there would be some force in defendants' contention. At least it would be a question for the jury to determine. **The record, however, is absolutely devoid of any showing whatsoever of any statement or action by plaintiff at or about the time he is alleged to have made the representations that would show an intention on his part not to carry them out.**

Danto v. Charles C. Robbins, Inc., 250 Mich. 419, 425 (Mich. 1930) (emphasis added).

That USI accused opposing counsel and the Plaintiffs of fraud without any factual basis whatsoever goes beyond recklessness in pleading and actually becomes dangerous, given attorneys' professional duties and that pleadings become part of the public record. See Williams v. Fla. Health Scis. Ctr., No. 8:05-CV-68-T-23, 2007 U.S. Dist. LEXIS 13006, *7 (M.D. Fla. Feb. 26, 2007). ("An accusation of fraudulent conduct against another member of the bar is a serious charge . . . [t]he court cannot condone ad hominem

attacks against counsel that are abusive, offensive, and baseless."). Worse still is USI's implicit suggestion that this Court presided over a sham proceeding when it oversaw the October 26, 2010 settlement conference. Courts have the power under FED. R. CIV. P. 12(f) to prevent damage to the reputation of attorneys and the decorum of court proceedings. Here, USI made no attempt to plead its fraudulent inducement count as anything more than a baseless, ad hominem attack, and the only adequate remedy is for this Court to strike USI's accusations directed at opposing counsel, the Plaintiffs, and the integrity of this Court.

### B. NVI and Torchia's actions following the settlement conference directly refute USI's allegations.

USI failed to plead facts in support of their claim of fraudulent inducement because such facts do not exist. In reality, NVI and Torchia made specific preparations for their first payment to USI following the October 26, 2010 settlement conference. On January 27, 2011, NVI and Torchia overnighted a $100,000 check with the notation "USI Settlement" to their counsel, Graham & Penman, LLP. (See Declaration of Jason W. Graham, Esq., ¶ 2, Ex. A). Graham & Penman, LLP deposited NVI's $100,000 check into its IOLTA account on January 28, 2011. (See Id., ¶ 3, Ex. B (Graham & Penman, LLP's IOLTA account summary, showing deposits of $150,000); Ex. C (Graham & Penman, LLP's administrative record of IOLTA deposits on January 28, 2011.)) Upon deposit, Jason W. Graham immediately sent USI's counsel an email stating "I have the

7

$100K in my trust account." (See Id., ¶ 4, Ex. D). Mr. Franzinger replied to this email stating "Good." (Id.).

NVI and Torchia and their counsel negotiated the settlement agreement with USI in good faith with intent to perform. (Id. ¶ 5). They would not have executed and notified opposing counsel of the transfer of $100,000 if they did not intend to perform their obligations under the settlement agreement. (Id. ¶ 6). After the settlement conference at which USI alleges that opposing counsel fraudulently conspired with NVI and Torchia to enter into a settlement with no intent to perform, USI disclosed virtually every detail that anyone would care to know about the settlement agreement. (Id. ¶ 7). USI's breach was substantial and justifies the excusal of NVI and Torchia's performance under Michigan law. See, e.g., Michaels v. Amway Corp, 206 Mich. App. 644, 650 (1994), quoting Flamm v. Scherer, 40 Mich. App. 1, 8-9 (1972) ("one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform."). NVI and Torchia and their counsel learned of USI's prior breach of the settlement agreement on February 1, 2011. (Id. ¶ 8). These documented facts entirely refute USI's reckless and scandalous accusation that "Plaintiffs and their counsel intentionally misrepresented their intentions to fully and completely settle the W.D. Mich. Action." (Countercl. ¶ 91). In reality, shortly after NVI and Torchia prepared their first payment, they learned that USI had disclosed confidential terms to third-parties, indeed the entire world. (Ver. Compl. ¶ 15; Graham Decl. ¶ 8). NVI and

8

Torchia were forced to suspend their performance. (Ver. Compl. ¶ 15). Simply put, USI failed to plead a factual basis for fraudulent inducement because there is none.

## IV. Conclusion.

This Court should strike USI's scandalous allegations under FED. R. CIV. P. 12(f) and they should be sanctioned under FED. R. CIV. P. 11.

Respectfully submitted, this the 16th day of January, 2012.

/s/ Jason W. Graham
Jason W. Graham
Georgia Bar No. 304595
jason@grahamandpenman.com
Attorney for NVI and Torchia

Graham & Penman, LLP
2989 Piedmont Road, NE
Suite 200
Atlanta, Georgia 30305-2700
Telephone: (404) 842-9380
Facsimile: (678) 904-3110

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for the other parties in the foregoing matter with a copy of the Plaintiffs' Brief in Support of Motion to Strike via the Court's CM/ECF notification system to:

> Robert J. Franzinger, Esq.
> Dykema Gossett, PLLC
> 400 Renaissance Ctr
> Detroit, Michigan 48243-1502
> Attorney for USI

This the 16th day of January, 2012.

> /s/ Jason W. Graham
> Jason W. Graham
> Georgia Bar No. 304595
> jason@grahamandpenman.com
> Attorney for NVI and Torchia

Graham & Penman, LLP
2989 Piedmont Road, NE
Suite 200
Atlanta, Georgia 30305-2700
Telephone: (404) 842-9380
Facsimile:  (678) 904-3110