UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL VIATICAL, INC., and
JAMES TORCHIA,

       Plaintiffs,

v.

UNIVERSAL SETTLEMENTS
INTERNATIONAL, INC.,

       Defendant.
                                     /

File No.  1:11-CV-1226

HON. ROBERT HOLMES BELL

**O P I N I O N**

This diversity breach of contract action is before the Court on Defendant's motion to confirm that the temporary restraining order entered by the Georgia state court has expired, or, in the alternative, to dissolve any existing injunction (Dkt. No. 68).  For the reasons that follow, Defendant's motion will be granted in part and denied in part.

I.

Plaintiffs National Viatical, Inc. and James Torchia filed this action in the Cherokee County Superior Court in Georgia, alleging that Defendant Universal Settlements International, Inc. ("USI") breached the confidentiality provision of their oral settlement agreement in *Universal Settlements International, Inc. v. National Viatical, Inc.*, No. 1:07-CV-1243 (W.D. Mich.)  Plaintiffs seek a judgment (1) declaring that USI's breaches excuse Plaintiffs from performance under the settlement agreement, (2) awarding them damages for

breach of contract, (3) temporarily enjoining USI from seeking default or demanding performance of the settlement agreement until this case can be tried on the merits, and (4) permitting Plaintiffs to setoff all damages incurred from USI's breaches against their performance under the settlement agreement.  (Dkt. No. 1, Ex. 1, Compl.)

On April 21, 2011, Plaintiffs obtained a temporary restraining order ("TRO") from the Georgia court restraining USI from "(1) demanding performance under its settlement agreement with Plaintiffs; and (2) seeking default against Plaintiffs." (Dkt. No. 1, Ex. 4.) On April 27, 2011, this action was removed to the United States District Court for the Northern District of Georgia. On May 10, 2011, Plaintiffs filed a motion for a preliminary injunction requesting the same relief addressed by the TRO. (Dkt. No. 3.) On November 17, 2011, the action was transferred to this Court. (Dkt. No. 29.) Following a telephone Rule 16 scheduling conference, Magistrate Judge Joseph G. Scoville entered a Case Management Order which addressed the TRO and motion for preliminary injunction as follows:

> If defendants seek relief from the TRO entered in state court, they should move to dissolve the TRO.  Plaintiffs' motion for preliminary injunction (docket #3) is **DISMISSED** as moot.

(Dkt. No. 61.)  Defendant now seeks an order confirming that the TRO has expired, or, in the alternative, an order dissolving any existing injunction.

## II.

Defendant has requested a ruling that the TRO issued by the Georgia state court has expired as a matter of law.

The Case Management Order assumed the continued viability of the TRO and dismissed Plaintiffs' motion for preliminary injunction as moot. Because Defendant did not appeal or move for relief from the Case Management Order, the Court is not inclined to consider Defendant's argument that the TRO has expired. The Court will turn instead to Defendant's alternative argument that any existing injunction should be dissolved.

Determining whether an order is a TRO or a preliminary injunction depends on the nature and substance of the order rather than its label. *Ne Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1005 (6th Cir. 2006). "[A] temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 86 (1974).

The continuation of the TRO assumes that the order is the functional equivalent of a preliminary injunction, but the court must consider whether the order conforms to the standards applicable to preliminary injunctions. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Plaintiffs assert that the order was entered "after notice and hearing evidence." (Dkt. No. 72, Pls.' Resp. 4.) However, the record reflects that the existing injunction was entered on an ex parte basis and without requiring security. The certification of counsel filed with the Georgia Court on April 21, 2011 states:

> Counsel for Plaintiffs certifies they have called Robert Franzinger, Mark Van Der Laan, and Randy Bennett, counsel for USI on this day. Mr. Bennett stated to Jason W. Graham that USI intends to oppose this action and the temporary restraining order in the future, but has not retained local counsel or taken any action to oppose the requested temporary restraining order at this time.

(Dkt. No. 1, Ex. 3, Certif. of Counsel.) The TRO similarly indicates that it was entered after considering "*Plaintiff's* motion and evidence." (Dkt. No. 1, Ex. 4, TRO (emphasis added).) Although Defendant was given notice of Plaintiffs' application for a TRO, Defendant was not given an opportunity to be heard.

The Court concludes that the issue of injunctive relief should be revisited so that Defendant can be heard. The Court will decide the issue of whether to continue or dissolve the existing injunction *de novo* based on the briefs filed on the current motion to dissolve, as well as the briefs filed in support of and in opposition to Plaintiffs' motion for preliminary injunction.

In evaluating a motion for a preliminary injunction, this Court considers:

> (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

4

*McNeilly v. Land*, No. 10-2244 slip op. 5-6 (6th Cir. July 3, 2012) (citing *American Imaging Services, Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 858 (6th Cir. 1992)). These four considerations are "factors to be balanced and not prerequisites that must be satisfied." *Id*. (quoting *Eagle-Picher*, 963 F.2d at 859).

**A. Likelihood of Success on the Merits**

Plaintiffs contend that Defendant breached the confidentiality provision of the Settlement Agreement by disclosing the total amount of the settlement. Plaintiffs allege in their verified complaint that Defendant, in violation of their obligations under the confidentiality provision of the Settlement Agreement, posted a "Notice of Settlement of US Litigation" on its website reporting essential terms of the Settlement Agreement, including the total amount of the settlement, and the term of payments of the settlement amount. (Ver. Compl. ¶¶ 16-20.) Plaintiffs allege that USI also disclosed confidential information to third-parties without ensuring compliance with its confidentiality obligations, and that Ernst & Young, USI's Monitor in Canadian restructuring proceedings, disclosed confidential information regarding the settlement and posted the information prominently on its website, where it remains publically available. (Ver. Compl. ¶¶ 21-22).

Defendant does not deny making the disclosures. Defendant contends, however, that such disclosures did not violate the confidentiality provision.

When the parties' settlement was placed on the record, it was understood that the confidentiality provision would except any necessary reporting to the Canadian bankruptcy

5

court and/or taxing authorities, and that USI would make a good-faith effort limit public disclosures. (No. 1:07-CV-1243, Dkt. No. 470, Tr. of Settlement Conf. 10-12.)

Plaintiffs' allegation that USI violated the confidentiality agreement by placing the settlement on its web site was considered by Magistrate Judge Carmody in the prior action. Judge Carmody, who conducted the settlement hearing, noted that the parties agreed on the record that there would have to be some disclosure in connection with the Canadian bankruptcy proceeding. (No. 1:07-CV-1243, Dkt. No. 494, Mot. Hr'g Tr. 4.) She reviewed what was actually posted on web sites by USI and the monitor, and expressed her doubt that such disclosure was a breach of the confidentiality agreement because it did not disclose details of the settlement and because the disclosure appeared to be consistent with USI's corporate obligations to its creditors. (No. 1:07-CV-1243, Dkt. No. 494, Mot. Hr'g Tr. 5-6, 8-9, 16.) As the Magistrate Judge noted, "it seems this is just as bare bones as they could have made it within their obligation, I think, to disclose to their investors that the case had been settled." (*Id*. at 9.) The Magistrate Judge's observations did not rise to the level of findings of fact. (No. 1:07-CV-1243, Dkt. No. 495, Op. 2-3.) Nevertheless, her observations are a preliminary view of the available evidence, much as this Court is required to do on a motion for a preliminary injunction. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3rd Cir. 2004) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.") In light of the Magistrate Judge's preliminary assessments, and because Plaintiffs

have not offered any additional evidence of USI's alleged breach of the confidentiality agreement, the Court cannot find that Plaintiffs have a strong likelihood of success on the merits of their claim that Defendant breached the confidentiality agreement.

Plaintiffs have indicated that their primary claim in this action is their request for a declaratory judgment that USI's breach of contract excuses their performance. Under the first-breach doctrine, one who commits the first "substantial breach" of a contract cannot maintain an action against the other contracting party for failure to perform. *Chrysler Intern. Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998) (quoting *Ehlinger v. Bodi Lake Lumber Co.*, 324 Mich. 77 , 36 N.W.2d 311, 316 (1949)). A substantial breach is one that has "effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Id.* (quoting *McCarty v. Mercury Metalcraft Co.*, 372 Mich. 567, 127 N.W.2d 340, 343 (1964)); *see also Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 341 F. App'x 93, 96 (6th Cir. 2009) (same).

Even if Plaintiffs had shown a likelihood of success on the merits of their claim that Defendant breached the confidentiality agreement, Plaintiffs have not alleged that the breach rendered their performance ineffective or impossible. Plaintiffs have not shown a strong likelihood of success on the merits of their claim that Defendant's breach excused them from performing their obligations under the Settlement Agreement.

**B. Irreparable Harm**

Plaintiffs contend that they will suffer irreparable harm in the absence of preliminary injunctive relief because they will have no adequate legal remedy. Plaintiffs contend that their primary claim is a declaratory judgment that USI's breach of contract excuses their performance, and that without injunctive relief, this claim will be moot.

When courts consider irreparable harm, the key word is "irreparable:"

> Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Babler v. Futhey,* 618 F.3d 514, 523-24 (6th Cir. 2010) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "The general rule is that 'a plaintiff's harm is not irreparable if it is fully compensable by money damages.'" *Langley v. Prudential Mortg. Capital Co., LLC*, 554 F.3d 647, 649 (6th Cir. 2009) (quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). "Normally the mere payment of money is not considered irreparable . . . because money can usually be recovered from the person to whom it is paid." *Philip Morris USA Inc. v. Scott*, — U.S. —, 131 S.Ct. 1, 4 (2010).

Plaintiffs describe their harm as the loss of equitable relief. However, the real harm Plaintiffs seek to avoid is the payment of money. Plaintiffs are essentially arguing that if a preliminary injunction is not entered, they will have to pay the amount they agreed to pay under the Settlement Agreement, or be subject to the Settlement Agreement's default

8

remedies. Plaintiffs seek to avoid paying the money owed under the Settlement Agreement until it is determined whether payment is excused in full, or whether there will be a set-off against the money owed as a result of Defendant's alleged breach of the confidentiality agreement.

Plaintiffs correctly note that even in cases involving monetary relief, courts have found irreparable harm when a party would lack the ability to satisfy monetary relief. *See*, *e.g.*, *Janvey v. Alguire*, 647 F.3d 585, 600-01 (5th Cir. 2011) (holding that preliminary injunction was appropriate to protect against monetary asset dissipation); *Transamerica Ins. Fin. Corp. v. N. Am. Trucking Ass'n, Inc.* 937 F. Supp. 630, 635 (W.D.Ky.,1996) (citing cases involving insolvency); *but see Hendricks v. Comerica Bank*, 122 F. App'x 820 (6th Cir. 2004) (holding that a beneficiary's insolvency is insufficient as a matter of law to obtain an injunction preventing a bank from honoring the beneficiary's draw on an international letter of credit). Nevertheless, to demonstrate irreparable harm, Plaintiffs must show that unless a preliminary injunction is entered, they will suffer "actual and imminent" harm rather than harm that is "speculative or unsubstantiated." *Abney v. Amgen, Inc.* 443 F.3d 540, 552 (6th Cir. 2006). A plaintiff seeking preliminary injunctive relief is required to demonstrate that irreparable injury is not only possible, but that it is "likely" in the absence of an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

Plaintiffs assert that they will not be able to recoup any money they might pay under the Settlement Agreement because every cent they pay to USI will disappear to Canada. In

9

support of this assertion Plaintiffs point only to evidence that Defendant is proceeding in the Canadian bankruptcy court. The record reflects that Defendant is not in bankruptcy per se, but is involved in a restructuring in a Canadian Companies' Creditors Arrangement Act court. (No. 1:07-CV-1243, Dkt. No. 470, Tr. of Settlement Hr'g 13.) The record also reflects that the Creditors Committee supports the settlement, and that the Canadian Superior Court of Justice has ordered the settlement proceeds to be held in trust by the law firm of Dykema Gossett, which is a Michigan law firm. (Dkt. No. 70, Ex. G.) Plaintiffs' claim that monetary relief will not be available at the conclusion of this case and that equitable relief is necessary to protect their monetary remedy is speculative at best.

**C. Balance of Hardships**

Finally, the Court must consider whether the issuance of a preliminary injunction will cause substantial harm to others and whether it would serve the public interest.

USI contends that it will be harmed by the issuance of a preliminary injunction because it will be denied the timely performance it negotiated in the Settlement Agreement.

The dispute in this case is primarily a private dispute between Plaintiffs and Defendant. The public does not have a strong interest in this case other than ensuring that parties have a forum for the resolution of their disputes, and in ensuring the finality of cases, including cases settled by agreement of the parties.

Upon review of all of the preliminary injunction factors, the Court concludes that the balance of considerations does not favor the continuation of injunctive relief. Plaintiffs have

not shown a strong likelihood of success on the merits, and Plaintiffs have not shown that they do not have a legal remedy for any harm they might suffer. Accordingly, the TRO entered by the state court will be dissolved. However, because Plaintiffs have relied on the continuation of the TRO entered by the state court, the Court will continue the injunction for fourteen days from the date of this opinion in order to provide Plaintiffs with a reasonable opportunity to comply with their obligations under the Settlement Agreement. The TRO will expire fourteen days from the date of this opinion.

      An order consistent with this opinion will be entered.


Dated: August 31, 2012                /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          UNITED STATES DISTRICT JUDGE