UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONAL VIATICAL, INC., and
JAMES TORTIA

 Plaintiffs/Counter-Defendants,

v.

UNIVERSAL SETTLEMENTS
INTERNATIONAL, INC.,

 Defendant/Counter-Claimant.
_____/

File No. 1:11-CV-1226

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This breach of contract action is before the Court on Defendant Universal Settlements International, Inc.'s ("USI") motion for summary judgment in its favor and against Plaintiffs, dismissing all of Plaintiffs' claims with prejudice and awarding USI damages on its counter-claims. (Dkt. No. 124.) For the reasons that follow, USI's motion for summary judgment will be granted with respect to Plaintiffs' claims and denied moot with respect to USI's counter-claims.

**I.**

Plaintiffs National Viatical, Inc. ("NVI") and James Torchia filed this action in the Cherokee County Superior Court in Georgia, alleging that USI breached the confidentiality provision of an oral settlement agreement in a prior action, *Universal Settlements International, Inc. v. National Viatical, Inc.*, No. 1:07-CV-1243 (W.D. Mich.). On April 21,

2011, Plaintiffs obtained a temporary restraining order ("TRO") from the Georgia state court restraining USI from "(1) demanding performance under its settlement agreement with Plaintiffs; and (2) seeking default against Plaintiffs." (Dkt. No. 1, Ex. 4.) Defendant removed this action to the United States District Court for the Northern District of Georgia. (Dkt. No. 1.) On May 10, 2011, Plaintiffs filed a motion for a preliminary injunction requesting the same relief addressed by the TRO. (Dkt. No. 3.) Defendant filed a counterclaim alleging breach of contract and fraudulent inducement, and seeking damages and declaratory relief. (Dkt. No. 23.) On November 17, 2011, the action was transferred to this Court. (Dkt. No. 29.) On August 31, 2012, this Court entered an order dissolving the TRO entered by the Georgia state court. (Dkt. No. 94.) The order dissolving the TRO was affirmed on appeal. *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, No. 12-2262, — F. 3d —, 2013 WL 2249057 (6th Cir. May 23, 2013).

Plaintiffs allege breach of the settlement agreement in the prior action. The prior action was a suit by USI against NVI, Torchia, and their attorney, Mark Cellelo, claiming that they misappropriated $5,000,000 in funds they were holding in escrow for USI. USI sought the return of $5,000,0000 with interest, as well as treble damages and reasonable attorney's fees for statutory conversion. *See* Mich. Comp. Laws § 600.2919a. On October 26, 2010, on the eve of trial and after an all-day settlement conference, the parties entered into an oral settlement which they placed on the record before Magistrate Judge Carmody. (Case No. 1:07-CV-1243, Dkt. No. 470, Tr. of Settlement Conf.). In exchange for the mutual release

2

of all claims, Celello agreed to pay USI $242,000 (*Id.* at 5), and NVI and Torchia agreed to pay USI $1,000,000 in installment payments, with the last installment due twelve months from the date of the settlement (*Id.* at 5-6, 12). To secure the judgment, NVI and Torchia agreed to assign USI an interest in an insurance policy. (*Id.* at 6.) NVI and Torchia further agreed that if they defaulted on any payment and failed to cure the default within ten days after receiving notice, a judgment of $5,000,000 would enter against them. (*Id.* at 9, 12.) Notice of the settlement would have to be given to the Canadian CCAA court.[1] (*Id*. at 4.) The parties agreed that the terms of the settlement would be confidential, except as to certain necessary disclosures, including disclosures to the CCAA court, taxing authorities, attorneys, accountants, and Ernst & Young, USI's Monitor in the Canadian restructuring proceedings. (*Id.* at 6, 10-15.) Magistrate Judge Carmody ordered the parties to file dismissal papers with the Court by January 24, 2011. (Case No. 1:07-CV-1243, Dkt. No. 467, Order.)

USI circulated a proposed draft settlement agreement on November 17, 2010. Although Cellelo's counsel responded with edits, USI received no response from NVI or Torchia. USI circulated revised settlement agreements on January 21, 2011, and again on January 24, 2011, but again received no response from NVI and Torchia. (Dkt. No. 125, Def. Br. 10-11.)

NVI and Torchia's first payment was due on January 26, 2011. They did not make

---

[1] During the pendency of the prior action USI sought relief in the Ontario Superior Court under the Companies' Creditors Arrangement Act of Canada ("CCAA"), which is similar to a reorganization under Chapter 11 of the United States Bankruptcy Code.

their first payment to USI by that date. According to counsel for NVI and Torchia, NVI and Torchia overnighted their first $100,000 check to him on January 27, 2011, after the payment was due.

Following the settlement, a dispute arose concerning whether USI breached the confidentiality provision by publishing some aspects of the settlement on its website. When, as of March 8, 2011, dismissal documents had still not been filed, the Court assumed that the matter would have to proceed to trial, and rescheduled the matter for a final pretrial conference. (*Id.* at Dkt. No. 472.) Celello responded by filing an emergency motion to enforce the settlement agreement and for injunctive and monetary sanctions against USI for breaching the confidentiality agreement. (*Id.* at Dkt. No. 473.) NVI and Torchia moved to amend their counterclaim to allege a claim against USI for breach of the settlement agreement. (*Id.* at Dkt. No. 477.) NVI and Torchia then withdrew the motion. (*Id.* at Dkt. No. 487.) Judge Carmody granted Cellelo's request for an order that the parties have a valid oral settlement, denied his request for monetary sanctions, but enjoined USI from posting any further information regarding the settlement or otherwise violating the confidentiality agreement. (*Id.* at Dkt. No. 487.) USI appealed. This Court affirmed the Magistrate Judge's order, except as to injunctive relief. (*Id.* at Dkt. No. 495.) On April 11, 2011, this Court issued an order dismissing the case pursuant to the terms of the parties' oral settlement agreement. (*Id.* at 504, 4/11/2011 Order.)

On April 20, 2011, NVI and Torchia filed the instant action against USI. Plaintiffs

4

seek a judgment (1) declaring that USI's breaches excuse Plaintiffs from performance under the settlement agreement, (2) awarding them damages for breach of contract, (3) temporarily enjoining USI from seeking default or demanding performance of the settlement agreement until this case can be tried on the merits, and (4) permitting Plaintiffs to set off all damages incurred from USI's breaches against their performance under the settlement agreement. (Dkt. No. 1, Ex. 1, Compl.) USI contends that it is entitled to summary judgment on Plaintiffs' complaint because it did not breach the confidentiality agreement.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488

F.3d 397, 403 (6th Cir. 2007)).  Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff.  *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

All of Plaintiffs' claims against USI are premised on USI's alleged breach of the confidentiality agreement by posting notice of the settlement on the homepage of its public website.

**A.  Evidence of Breach**

USI moves for summary judgment based on its contention that it did not breach the confidentiality agreement.  USI contends that Plaintiffs have failed to produce evidence to create a genuine dispute as to whether USI breached the confidentiality agreement.  USI's motion for summary judgment requires the Court to consider the nature of the confidentiality provisions agreed to and the nature of the disclosure made by USI.

When the settlement of the previous action was placed on the record NVI and Torchia requested a standard mutual confidentiality agreement. (Tr. 10.) No confidentiality term had been discussed with USI during the negotiations prior to going on the record. (Tr. 11.) It was well understood by all parties that the CCAA court would have to be notified of any settlement. (Tr. 4, 6, 13.)  Mr. Torchia asked if disclosure of the settlement to the Canadian

6

court would mean the settlement would go on a website, and then stated, "I don't care. It doesn't matter." (Tr. 11.)[2] Magistrate Judge Carmody followed up on Mr. Torchia's comment by indicating that it was her understanding that the real concern with respect to confidentiality was the potential $5 million judgment. (Tr. 11.)[3] Mr. Bennett, USI's Canadian counsel who represents USI in the CCAA proceeding, stated that he thought he

---

[2]Mr. Torchia has filed an affidavit asserting that when he said he did not care whether the settlement was placed on a website, he was anticipating disclosure on a court website, rather than on USI's website. (Dkt. No. 130, Torchia Aff. ¶ 15.) In determining the scope of the settlement agreement placed on the record, the Court applies "'an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'" *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) (quoting *Kloian v. Domino's Pizza L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)). Accordingly, Mr. Torchia's subjective intent is not relevant to the Court's determination of what kind of disclosure the parties agreed to. Applying an objective standard, the Court finds that the parties understood that there could be disclosure on USI's website. Mr. Torchia referenced "a website" rather than the CCAA court's website, and Mr. Torchia, who was a creditor of USI, was well aware of the website USI was using to communicate with its creditors.

[3]Magistrate Judge Carmody, who had conducted the settlement negotiations and had been privy to the concerns expressed by Mr. Torchia during those negotiations, described what she understood those confidentiality concerns to be:

> THE COURT: Let me just state, and you can correct me if I'm wrong, Mr. Graham [counsel for NVI and Torchia] or Mr. Torchia, but my understanding of the concern for the sealed nature and the confidentiality is that Mr. Torchia doesn't – if he's complying with the terms of the agreement doesn't want it to appear to any credit authority or any other entity that he has a five-million-dollar judgment against him because as I understand it, it doesn't become really a judgment for five million until he defaults on some part of the agreement. . . . [A]nd I think it's understood that this needs to be reported to the court in Canada.

(Settlement Tr. 11-12.)

7

could report a settlement of $1.24 million to the CCAA court without mentioning the $5 million contingency judgment because it was simply a default mechanism, and that should satisfy everyone. (Tr. 13.)[4] The parties ultimately agreed that any confidentiality agreement would exempt necessary disclosures to the CCAA court,[5] taxing authorities, accountants, lawyers, the CCAA court monitor, and potentially others. (TR. 10, 11, 14, 15.) Counsel for NVI and Torchia, as well as Mr. Torchia individually, expressed agreement to the terms of the settlement as they were placed on the record. (Tr. 16.)

When the settlement was entered into, the parties were in uncharted territory. They were uncertain as to what would have to be reported to the CCAA court, how it would have to be reported, or what other steps the CCAA court would require USI to take. Although the precise contours of the confidentiality provision were not spelled out, it was understood and

---

[4]Mr. Bennett made the following representation:

MR. BENNETT: I think that I can do it by presenting it in a chambers motion which would – and I think that the issue here, I assume, is the issue of the consent judgment. In my view the consent judgment is simply a default mechanism, so it can be reported as being settled for a total settlement at this point of $1.242 million I think is what it amounts to with the contribution from the insurer and simply report it that way. That would satisfy everybody's concern. The rest of the details are contingent events that in the event of a default, they will trigger, but I don't think they necessarily need to be reported at this point in time

(Settlement Tr. 13.)

[5]Counsel for NVI and Torchia specifically requested an assurance that when USI recommended the settlement to the CCAA court, USI would represent that the settlement had its full support and approval. (Tr. 14.)

8

agreed that the settlement agreement, or at least some aspects of it, would have to be disclosed to a number of entities, some of whom would not be bound by any confidentiality agreement,[6] and that the parties would make a good faith effort to minimize public disclosures and to keep the information of greatest concern, i.e., the default provision, off the record.

The disclosure at issue in this case is the following notice that appeared on the front page of USI's website:

> Although the settlement is subject to a U.S. Federal Court judicial order requiring confidentiality, the essential terms that may be reported are as follows:
>
> USI will receive a total amount of $1,242,000 payable over a period of one year and there are terms imposing sanctions if there is a default on any of the required payments. The counterclaim against USI will be dismissed. USI's litigation committee has approved the settlement. The terms of the settlement are in the process of being finalized and documented.

(USI Br. 12.)

The CCAA restructuring Plan required USI to maintain a website for the disclosure of information to its thousands of investor creditors. (Dkt. No. 125, Ex. A, CCAA Plan Sch. A, ¶ 8.) USI has presented evidence that when Mr. Bennett reported the settlement to the CCAA court in a teleconference, the CCAA court supervising judge directed him to bring

---

[6]As noted by the Sixth Circuit, "NVI and Torchia admittedly permitted USI to disclose the terms of the settlement agreement to a large number of third parties that were not bound by the confidentiality agreement," including the CCAA court and the monitor. 2013 WL 2249057 at *5.

9

a motion pursuant to § 7.8 of the CCAA Plan and to provide notice of the motion to USI's creditors by posting a statement on the USI website. (Dkt. No. 125, Ex. B, Bennett Decl. ¶ 9.) USI did so, and, in keeping with the settlement agreement, limited its disclosure on the website to the bare minimum, both as to content and the duration of the public notice. The notice specified the total amount of the settlement ($1.242 million), but it did not indicate how much was payable from which of the three defendants. The notice mentioned the potential for sanctions in the event of a default, but it did not identify the nature of the sanction, the amount of the sanction, or who would be liable for the sanction. The notice was posted on January 7, 2011, and only remained on the website for a month before it was removed.

NVI and Torchia contend that the confidentiality provision only allowed necessary disclosures, and that there is a factual dispute as to whether USI's disclosure of the settlement on the website was necessary. In support of this assertion, NVI and Torchia point to the following evidence: (1) Mr. Buisick, a member of the creditors committee, approved the settlement on the record (Tr. 16); (2) the litigation committee approved the settlement before the notice was posted; (3) USI admitted in the notice that the approval of the Canadian court was not necessary; and (4) the notice was placed on the website four days before the Canadian court considered the settlement.

NVI and Torchia's evidence that the creditors' approval was not required does not call into question Mr. Bennett's declaration that the CCAA Court required him to post a notice

about the settlement on USI's website. The reason for posting was to give notice to the creditors, not to obtain their approval. Moreover, giving notice of the settlement to the creditors was reasonably anticipated. Plaintiffs had a clear understanding that the creditors in the CCAA action had an interest in any settlement as reflected by the fact that Plaintiffs moved to hold USI in contempt for failing to bring a member of the creditors' litigation committee with full settlement authority to the October 7, 2009, settlement conference. (Dkt. No. 337, Mot. for Contempt & Br. 2-5.) NVI and Torchia have failed to create an issue of fact for trial as to whether USI was required by the CCAA court to give notice of the settlement to USI's creditors on its website.

The Court finds, as a matter of law, that USI's posting of the notice on its website did not breach the confidentiality provision of the parties' oral settlement agreement.[7] The limited disclosure on the website was within the scope of what was contemplated by the parties when they placed their settlement on the record. The precise contours of the

---

[7]This Court is not alone in finding that the limited disclosure did not breach the settlement agreement. At a motion hearing after the settlement was entered into, Magistrate Judge Carmody, who presided over the settlement, expressed her doubt that such disclosure was a breach of the confidentiality agreement because it did not disclose details of the settlement and because the disclosure appeared to be consistent with USI's corporate obligations to its creditors. (No. 1:07-CV-1243, Dkt. No. 494, Mot. Hr'g Tr. 5-6, 8-9, 16.) As the Magistrate Judge noted, "it seems this is just as bare bones as they could have made it within their obligation, I think, to disclose to their investors that the case had been settled." (*Id*. at 9.) The Sixth Circuit similarly noted, in affirming the order dissolving the preliminary injunction, that "[t]he plain language of the settlement hearing simply does not support" NVI and Torchia's claim that "USI breached the confidentiality provision of their settlement agreement by virtue of the web posting." 2013 WL 2249057 at * 2, 4.

confidentiality provision were not spelled out because it was not clear what would be required by the CCAA court. Nevertheless, disclosure to the CCAA court and satisfying the CCAA court's requirements were key to the settlement agreement. It was well understood that USI owed a fiduciary responsibility to its creditors and that the creditors in the CCAA action had an interest in any settlement. Accordingly, the CCAA court's requirement that the creditors be given some kind of notice of the settlement was reasonably within the parties' contemplation at the time of the settlement hearing. The notice was as generic as it could be, while still providing notice to the creditors of the settlement. The notice avoided the primary concern expressed at the hearing regarding the entry of a $5 million judgment in the event of default. Accordingly, the Court finds that the notice USI placed on its website did not breach the confidentiality provision of the settlement agreement.

**B. Excused Performance**

Moreover, even if USI's notice were considered to be a breach of the confidentiality provision, Plaintiffs' suggestion that the breach excused them from all performance under the first-breach doctrine lacks merit. Under the first-breach doctrine, a party to a contract who commits the first "substantial breach" of the contract "cannot maintain an action against the other contracting party for failure to perform." *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998) (quoting *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311, 316 (Mich. 1949)). A "substantial breach" is one where "the breach has effected such a change in essential operative elements of the contract that further

performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Id.* (quoting *McCarty v. Mercury Metalcraft Co.*, 127 N.W.2d 340, 343 (Mich. 1964)).

Torchia states that if USI had not disclosed confidential information, he would have authorized the first payment. (Torchia Decl. ¶ 18.) However, NVI and Torchia were already delinquent on their first settlement payment before they even became aware of the posting. The first payment was due on January 26, 2011, and NVI and Torchia's counsel states that he first learned about the notice on USI's website on February 1, 2011. (Graham Decl. ¶¶ 18, 22.)

The Court concludes, as a matter of law, that USI's temporary posting of generic and limited information regarding the settlement, as required by the CCAA court, did not render performance by NVI and Torchia ineffective or impossible.[8]

**C. Evidence of Harm**

Not only is there no material issue of fact for trial concerning USI's alleged breach of the confidentiality agreement, there is also no material issue of fact for trial regarding Plaintiffs' assertion that they were harmed by the alleged breach. The only harm Plaintiffs have identified from the posting of the notice is the possibility that people in the small

---

[8]Notably, NVI and Torchia have never attempted to rescind the settlement or requested to go to trial on the claims at issue in Case No. 1:07-CV-1243.

viatical community who learned of the settlement might believe Plaintiffs were guilty of fraud and be reluctant to do business with them in the future, that parties unrelated to the litigation would know that money was available for settlement, and that the judgment would appear on Torchia's or NVI's credit rating. (Torchia Decl. ¶ 4.)

Plaintiffs' allegations of harm are wholly speculative. Plaintiffs have not shown how the generic information disclosed could cause the harms alleged. Plaintiffs have also failed to show that any of the harms they fear have come to pass. Plaintiffs have not shown that anyone in the viatical community made the assumption that Plaintiffs were guilty of fraud and ceased or avoided doing business with Plaintiffs as a result, much less that they did so as a result of viewing the notice on USI's website during the one-month period when it was available. The same notice was posted on the monitor's website and is still available on that website. Plaintiffs have taken no action remove this information from the monitor's website despite its availability on that site for over two years.

**D. Discovery**

NVI and Torchia have filed a Rule 56(d) affidavit asserting that they need discovery relating to the terms of the oral settlement agreement, the necessity of disclosure, and potential damages. In support of this motion they note that in September 2012, Magistrate Judge Scoville predicted that if he denied NVI and Torchia's motion for additional discovery, and the case was decided on summary judgment, it would be reversed on appeal for lack of any meaningful discovery. (Dkt. No. 116, Tr. 45.)

14

Plaintiffs' asserted need for additional discovery is not well-founded. Plaintiffs have already been given an extension for discovery. In response to Plaintiffs' motion, Magistrate Judge Scoville modified the case management order and extended the discovery deadline from August 30, 2012, (Dkt. No. 61, CMO), to December 28, 2012. (Dkt No. 113, Order Modifying CMO.) He also admonished the parties to work expeditiously to complete the discovery. (Dkt. No. 116, Tr. of 09/26/2012 Disco. Hrg. 47.) Despite having obtained the requested extension, Plaintiffs are now requesting additional time to engage in the very same discovery they were describing in September 2012. Plaintiffs' excuse for not conducting the discovery earlier is that they were under the belief that this action was stayed pending their appeal of this Court's dissolution of the temporary restraining order. (Dkt. No. 130, Graham Decl. ¶ 29.) This assertion is without merit. A district court retains jurisdiction to continue with the merits of the litigation while an appeal from an order granting or denying a preliminary injunction is pending. *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1174 (6th Cir. 1995) (quoting 9 M. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 203.11, at 3-54 (2d ed. 1989)); *see also Zundel v. Holder*, 687 F.3d 271, 282 (6th Cir. 2012) (quoting *Moltan*). Moreover, Plaintiffs' asserted belief that this action was stayed is questionable in light of the fact that Plaintiffs did engage in some discovery during the pendency of the appeal. (Dkt. No. 118, Cert. of Serv.) Plaintiffs' request for additional discovery will accordingly be denied.

For the reasons stated, Defendant is entitled to summary judgment on all of Plaintiffs'

15

claims against it.

IV.

USI has also requested summary judgment on its counterclaim against NVI and Torchia for breach of contract. USI asserts that NVI and Torchia breached the settlement agreement by failing to participate in the drafting of a written settlement, by failing to make the collateral assignment of the insurance policy, and by failing to make any of their installment payments. USI requests the Court to enter judgment in its favor in the amount of $5 million, the amount Plaintiffs agreed they would be liable for if they breached the Settlement Agreement.

Plaintiffs contend that USI is not entitled to summary judgment on its breach of contract claim because USI has failed to tender evidence in support of its counterclaim, and because the $5 million consent judgment is an unenforceable penalty or is unlawfully usurious.

USI's request for judgment for breach of contract and NVI and Torchia's opposition thereto mirror USI's request for judgment and arguments raised in Case No. 1:07-CV-1243. Because this Court is entering judgment in favor of USI in the amount of $5 million in Case No. 1;07-CV-1243 contemporaneously with the filing of this opinion, USI's request for summary judgment on its counterclaim for breach of contract will be denied as moot.

V.

Plaintiffs' actions in the current and prior litigation demonstrate that Plaintiffs are

using the disclosure on USI's website simply as a basis for trying to delay or avoid their obligations under the settlement agreement. After obtaining the benefit they sought, i.e., the termination of the litigation, Plaintiffs have done everything within their power to avoid any of their obligations under the settlement. Plaintiffs did not follow through on their agreement to assign their interest in an insurance policy to secure their $1,000,000 settlement obligation. Plaintiffs did not cooperate in reducing the oral settlement agreement to writing. Plaintiffs were already delinquent on the very first payment due under the settlement agreement before they became aware of any alleged breach of the confidentiality provision. It is time for Plaintiffs' gamesmanship to end. There are no issues of material fact, and USI is entitled to judgment as a matter of law. Accordingly, USI's motion for summary judgment will be granted, and Plaintiffs' complaint will be dismissed in its entirety.

An order and partial judgment consistent with this opinion will be entered.


Date: June 21, 2013                         /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE